UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------
:
:
KAYLA LEKETTEY,                               :
                                              :
                    Plaintiff,     :    14 Civ. 2528 (TPG)
                                              :
           v.                                 :    ECF CASE
                                              :
CITY OF NEW YORK *et al.*,        :    **OPINION**
                                              :
                    Defendants.    :
                                              :
                                              :
------------------------------------------------

Plaintiff Kayla Lekettey brings this action against defendant City of New York, Department of Parks and Recreation, as well as current and formers Parks Department staff members Ricardo Granderson, Linda Agnello, and Jonna Carmona-Graf (collectively, "defendants"). Plaintiff asserts claims for unlawful employment practices under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and for deprivation of her constitutional rights under 42 U.S.C. §§ 1983 and 1985.

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 13.) For individual defendant Granderson, who has already filed an answer, defendants move for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 13.)

For the reasons discussed below, defendants' motion is granted.

1

## The Complaint

The followings facts are drawn from the complaint, and are assumed to be true for purposes of this motion.

The Parks Department is responsible for maintaining New York City's parks, and furnishing recreational opportunities for New York City residents and visitors. Defendant Agnello currently works for the Parks Department, as the Chief of Administrative Services for Capital Projects. Defendant Carmona-Graf currently works for the Parks Department as the Chief Capital Program Manager. Finally, defendant Granderson was an investigator and employee of the Parks Department's Equal Employment Office ("EEO") until he resigned in November 2011.

In October 2007, plaintiff began her work for the Parks Department as an intern. In August 2008, she was hired as a provisional employee with the title of Assistant Landscape Architect in the Parks Department's Capital Projects section.

On May 6, 2011, Svetlana Filipovich, a Consultant Project Manager for the Parks Department—a title superior to that of plaintiff—allegedly entered plaintiff's cubicle, and made sexually explicit comments to plaintiff and fondled her. Plaintiff "explicitly and emphatically rejected" Filipovich's advances. (Compl. ¶ 13.)

The next day, plaintiff filed a written complaint regarding Filipovich's conduct with plaintiff's supervisors, Raymundo Gomez and Renata Sokolowski. Plaintiff also filed that complaint with David Martin, Filipovich's supervisor.[1] On May 25, 2011, plaintiff e-mailed Granderson of the EEO office, because "she was concerned that there ha[d] been no action on

---

[1] While Gomez was named as a respondent in plaintiff's unsuccessful complaint to the New York City Commission on Human Rights ("NYCCHR"), none of these supervisors are named as defendants in the operative complaint before the court.

2

her complaint and because of Filipovich's continued hovering and stalking near Plaintiff's workstation." (Compl. ¶ 15.) Granderson responded: "If I were in your shoes, then, as I wrote before, I would act like a grown up and ignore her." (*Id.*) On June 30, 2011, plaintiff received notice from Granderson that the case had been referred "to the Advocate Office for review, and that the EEO office would take no further action." (Compl. ¶ 16.)

On September 12, 2011, in response to a request from the "Community Associate EEO office" for information about any continuing harassment by Filipovich against plaintiff, plaintiff submitted "a journal detailing events of additional unlawful conduct that had occurred from the date of the first instance through July 19, 2011, and her fear of Filipovich." (Compl. ¶ 17.) Plaintiff's journal entries informed the EEO Office that Filipovich "continued to hang out in the vicinity of [plaintiff's] workstation," and that plaintiff "feared . . . Filipovich." (Dkt. No. 14, Ex. A at ¶ 16.) Granderson responded: "I'll take this response to mean there were no issues involving the respondent subsequent to complaint." (*Id.*; *see also* Compl. ¶ 17.)

On March 19, 2012, plaintiff e-mailed defendant Agnello to complain of continuing harassment from Filipovich, "including [a] March 15, 2012 confrontation with Filipovich where she made a direct threat to plaintiff that she would 'get rid of' Plaintiff's boyfriend." (Compl. ¶ 18.) Approximately one month later, on April 17, 2012, plaintiff was transferred—at her request—to a workstation further away from Filipovich. Plaintiff claims that "Filipovich continued to taunt, tease, mock, and harass Plaintiff as to Plaintiff's lack of power to prevent such harassing behavior with the full knowledge of Plaintiff's supervisors and managers." (Compl. ¶ 21.)

On May 29, 2012, plaintiff received a "determination letter" from the EEO—dated March 28, 2012—in which Granderson stated that "probable cause existed to support Plaintiff's

3

complaint that Filipovich committed acts of sexual harassment in violation of the City's EEO policy." (Compl. ¶ 20.) Plaintiff claims that the approximately two-month delay in providing her with information regarding the outcome of defendants' internal investigation "until after the time period had expired for filing [an] external administrative complaint" was the result of a conspiracy between defendants Granderson, Agnello, and Carmona-Graf. (Compl. ¶ 25.)

Less than one month later, on June 22, 2012, plaintiff was informed by Carmona-Graf and Agnello that she would be terminated "because her provisional position as an Assistant Landscape Architect would end on the close of business on July 6, 2012[.]" (Compl. ¶ 22.)

Plaintiff claims that her termination "was a pretext for unlawful conduct in violation of Title VII and because she complained about such unlawful conduct," or otherwise was "an adverse employment action against Plaintiff because she complained of workplace discrimination outlawed under Title VII." (Compl. ¶¶ 23, 35.) She also asserts Section 1983 and 1985 claims against each of the individual defendants, identically alleging that each acted "under color of law as defined under the Civil Rights Act," and acted "with the deliberate purpose of denying Plaintiff's right to due process and to deny Plaintiff the right to redress her grievances[.]" (Compl. ¶¶ 40-41, 45-46, 50-51.)

On July 18, 2012, plaintiff filed a complaint with the NYCCHR, the substance of which largely mirrors the operative complaint in the case pending before the court. (*See* Dkt. No. 14-1.) Plaintiff claims that she filed her complaint with the NYCCHR after she had "exhausted her workplace administrative remedies as required [under] current case law that is applicable in federal and state courts under . . . the *Ellereth-Faragher* exhaustion requirement[.]" (Compl. ¶ 24.) She now seeks damages, interest, attorneys' fees, and costs.

## Legal Standards

I. Legal Standard for Motion to Dismiss

In determining whether to dismiss a complaint for failure to state a claim, a court must "construe plaintiffs' complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in plaintiffs' favor." *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009). But to survive a motion to dismiss, a complaint must plead sufficient facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). Unless a plaintiff's well-pleaded allegations have "nudged [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570. Although a plaintiff is not required to plead a prima facie case of discrimination in employment cases, her claims must still be facially plausible. *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006).

In evaluating a motion to dismiss, a court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *ATSI Commc'ns Inc. v. Shaar Fund. Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (internal citations omitted).[2]

---

[2] Along with their memorandum in support of the instant motion, defendants submit a Declaration from Assistant Corporation Counsel Jeremy Jorgensen, and include four attached exhibits: (A) Plaintiff's Verified Complaint filed with the NYCCHR on July 18, 2012; (B) The NYCCHR's Determination and Order After Investigation, and finding of no probable cause dated October 15, 2014; (C) The Equal Opportunity Commission's Dismissal and Notice of Rights dated January 16, 2014; and (D) defendant Granderson's Answer to the complaint. (*See* Dkt. No. 14.) Because plaintiff's NYCCHR complaint was possessed by plaintiff and is incorporated by reference into the complaint—*e.g.*, Compl. ¶ 24—the court may consider Exhibit A in deciding this motion.

## II. Legal Standard for Judgment on the Pleadings

Under Rule 12(c) of the Federal Rules of Civil Procedure, a defendant who has already filed an answer to a complaint may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). In deciding a Rule 12(c) motion, the court applies the same standard as it would in deciding a Rule 12(b)(6) motion. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

## Discussion

### I. Title VII Claims

Plaintiff alleges that the Parks Department's actions "constituted unlawful employment practices and unlawful discrimination on the basis of sex in violation of Title VII." (Compl. ¶ 28.) She claims that the Parks Department's conduct "was carried out with malice or reckless disregard for Plaintiff's right to be free from discrimination because she refused to engage in a *quid pro quo* sexual relationship with an employee in a superior position." (Compl. ¶ 29.)[3] While the complaint itself appears to plead *quid pro quo* sexual harassment, plaintiff's opposition papers also invoke a "hostile work environment" theory of sexual harassment. For the reasons discussed below, plaintiff's claims are dismissed under either theory.

### A. Count I: Sexual Harassment

Title VII, 42 U.S.C. § 2000e *et seq.*, provides redress against employers who discriminate against individuals in the workplace. A plaintiff seeking relief for sex discrimination can proceed under two theories: (1) "quid pro quo" or (2) "hostile work environment." *Kotcher v. Rosa & Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 62-63 (2d Cir. 1992).

---

[3] Plaintiff does not assert Title VII claims against Granderson, Agnello, or Carmona-Graf. (*See* Dkt. No. 17 at 2 n.1 ("There is no Title VII claim being made against any individual defendant.").)

6

Under a "quid pro quo" theory, a plaintiff must plead an adverse employment action "either because of gender or because a sexual advance was made by a supervisor and rejected[.]" *Id.* To be an adverse employment action, there must be a link between the discrimination and some "tangible job benefits" such as compensation, terms, conditions, or privileges of employment. *Garrigan v. Ruby Tuesday, Inc.*, No. 13 CIV. 1196, 2013 WL 3946223, at *2-3 (S.D.N.Y. July 30, 2013).

Under a "hostile work environment" theory, a plaintiff must show not only actionable sex discrimination, but also that the supervisor's actions should be imputed to the employer. "A hostile work environment exists under Title VII where the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Moll v. Telesector Res. Grp., Inc.*, 760 F.3d 198, 203-04 (2d Cir. 2014). As a general rule, incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Id.* (internal citations omitted). Isolated acts, unless quite serious, do not meet the threshold of severity or pervasiveness.

1. Plaintiff's Claims Are Untimely

As an initial matter, plaintiff failed to file an administrative complaint with the EEOC within 300 days of the allegedly discriminatory act—a threshold requirement for Title VII claims. *See* 42 U.S.C. § 2000e-5(e)(1); *De La Pena v. Metro. Life Ins. Co.,* 552 F. App'x 98 (2d Cir. 2014). With respect to claims based on termination, failure to promote, denial of transfer, or refusal to hire, Section 2000e-5(e)(1) "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period," even if other acts of discrimination occurred within the statutory time period." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101,

114 (2002)); *see also Petrosino v. Bell Atl.*, 385 F.3d 210, 219-21 (2d Cir. 2004). With respect to hostile work environment claims, "consideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75-76 (2d Cir. 2010) (internal citations omitted); *see also Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009).

Plaintiff complains of one discrete act of sexual harassment by Filipovich—a sexual remark and fondling in plaintiff's cubicle on May 6, 2011. But plaintiff admits she did not file a charge with the EEOC until July 18, 2012—more than 300 days later. Defendants request that the court therefore dismiss plaintiff's claim as untimely.

In opposition, plaintiff alleges that the determination letter she received from a Deputy Director of the EEO was dated March 28, 2012, but was not actually sent to plaintiff until May 29, 2012. (Compl. ¶ 20.) Plaintiff argues that defendants should be equitably estopped from raising untimeliness as a defense, because defendants allegedly conspired to keep the findings of plaintiff's EEO complaint from her for nearly two months. This argument is unavailing. The doctrine of equitable estoppel "generally prevents a party from asserting a statute of limitations defense where a plaintiff knew that a cause of action existed, but the defendant's conduct caused them to delay bringing suit." *Williams v. City of New York*, No. 99 Civ. 0078, 2001 WL 770933, at *3-4 (S.D.N.Y. July 10, 2001). But courts in this circuit invoke the equitable estoppel doctrine against the Government "only in those limited cases where the party can establish both that the Government made a misrepresentation upon which the party reasonably and detrimentally relied and that the Government engaged in affirmative misconduct." *City of New York v. Shalala*, 34

F.3d 1161, 1168 (2d Cir. 1994). Equitable estoppel is not available against the Government "except in the most serious circumstances, and is applied with the utmost care and restraint." *Rojas–Reyes v. I.N.S.*, 235 F.3d 115, 126 (2d Cir. 2000) (internal quotations and citations omitted).

Plaintiff does plead affirmative misconduct on defendants' part in some sense. She alleges, albeit in conclusory fashion, that defendants conspired to delay the release of her EEO complaint status. But that allegation does not qualify as a "most serious circumstance[]" that would justify estopping the government from rightly asserting its timeliness defense. *See Williams*, 2001 WL 770933, at *3-4 (plaintiff who missed 300-day EEOC deadline because he was waiting to learn the outcome of his EEO complaint had not pled "serious, affirmative misconduct" by EEO justifying equitable estoppel).

Alternately, plaintiff maintains that her claim is timely because she has alleged "continued harassment" consisting of "a series of events in which she was being stalked and harassed by Filipovich from June 30, 2011, through April 17, 2012." (Pls' Op. at 8-9; Compl. ¶¶ 18-19.) Plaintiff claims that these allegations satisfy the "continuing violation" doctrine, thus salvaging the timeliness of her claims. (*Id.* (citing *Morgan*, 536 U.S. at 115); *see also Papelino v. Albany Coll. of Pharm. of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)). But plaintiff is incorrect. "Multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Valtchev v. City of New York*, 400 F. App'x 586, 588-89 (2d Cir. 2010) (internal citations omitted). Rather, to bring a claim within the continuing violation exception, "a plaintiff must at the very least allege that one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Id.*

Here, plaintiff does not allege that a single discriminatory act occurred within the relevant time period, nor does she allege a specific ongoing discriminatory policy or practice that could constitute a continuing violation of her rights. Plaintiff pleads only that Filipovich "stalked and harassed" her. But plaintiff's own journal entries indicate that Filipovich was merely "hanging out" around plaintiff's workstation, and do not support a plausible inference that Filipovich's conduct was motivated by plaintiff's sex. And, to the extent the March 2012 incident regarding a threat from Filipovich to plaintiff about "getting rid of" plaintiff's boyfriend qualifies as an incident of discrimination, the complaint does not plead facts supporting an inference that this incident occurred due to an ongoing policy at the Parks Department.

Because plaintiff filed her EEOC claim more than 300 days after the May 2011 incident of which she complains, and because plaintiff does not qualify for relief under the equitable estoppel or continuing violation doctrines, her Title VII claims must be dismissed.

2.   Even If Timely, Plaintiff Fails to State a Claim

To the extent plaintiff might in fact satisfy the continuing violation requirement, the complaint also fails to state a claim for sexual harassment or retaliation on the merits.

The only incidents plaintiff alleges within the 300-day EEOC deadline date to March 2012, when plaintiff claims she complained of "continued harassment" from Filipovich, including a confrontation where Filipovich stated she would "get rid of" plaintiff's boyfriend. Plaintiff also claims—without dating these incidents—that Filipovich "continued to taunt, tease, mock, and harass Plaintiff as to Plaintiff's lack of power to prevent such harassing behavior[.]" (Compl. ¶ 21). Even assuming these incidents qualify as a continuing violation, thus negating the timeliness concern, they are not sufficiently severe, pervasive, or related to sex to state a hostile work environment claim. Apart from the March 2012 comment regarding plaintiff's

boyfriend, these generalized allegations of "continued harassment" do not indicate that any alleged mistreatment was directed at plaintiff because of her sex. And the March 2012 comment, standing alone, is not sufficient to state a hostile work environment claim. In short, the specific incidents forming the backbone of plaintiff's complaint are simply "too few, too separate in time, and too mild, under the standard so far delineated by the case law, to create an abusive working environment." *See Alfano v. Costello*, 294 F.3d 365, 379-81 (2d Cir. 2002).

Nor do these few incidents satisfy the legal standard for *quid pro quo* harassment. The complaint does not support a plausible inference that there was in fact any link between plaintiff's gender or her rejection of any sexual advance made by Filipovich on the one hand, and her termination on the other. To the extent plaintiff continues to press her *quid pro quo* theory—which is unclear, given her opposition papers' invocation of a hostile work environment theory—plaintiff has failed to state a cognizable claim.

## B. Count II: Retaliation

Plaintiff claims that the Parks Department inflicted "an adverse employment action against Plaintiff because she complained of workplace discrimination outlawed under Title VII." (Compl. ¶ 35.)

As with discrimination claims, Title VII requires retaliation claimants to file a charge with the EEOC within 300 days of the alleged retaliatory act. *Valtchev v. City of New York*, 400 F. App'x 586, 588 (2d Cir. 2010). If this threshold is satisfied, plaintiff must demonstrate that "(1) she engaged in protected activity; (2) the employer was aware of that activity; (3) the employee suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action." *Lore v. City of Syracuse,* 670 F.3d 127, 157

11

(2d Cir. 2012). Proof of causation can be shown either: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000). The Second Circuit has not specified precisely how close in time a complaint and retaliatory act must be to infer causation, but it has held that a retaliatory action 15 months after the filing of an EEOC complaint is "too temporally removed to support the inference" of causation. *Woodworth v. Shinseki,* 447 Fed. App'x 255, 258 (2d Cir. 2011).

On her retaliation claim, plaintiff satisfies the timeliness requirement, because she filed her EEOC charge soon after her termination. However, the complaint simply fails to meet the relevant substantive standard for retaliation claims. Plaintiff has not pled any facts supporting an inference of retaliatory animus directed against her by any defendant. She does not, for instance, allege that Carmona-Graf or Agnello at all referenced plaintiff's harassment claims against Filipovich when informing plaintiff of her termination, or made any remarks that could be viewed as reflecting discriminatory animus. Nor does the court find sufficient allegations of indirect evidence. Plaintiff has not pled facts to support an inference that the May 2011 incident—or plaintiff's related internal or external complaints—are sufficiently related to her July 2012 termination.

Plaintiff was terminated more than a year after the May 2011 incident. She admits she was a mere provisional employee, and that she was told she was losing her job "because her provisional position as an Assistant Landscape Architect would end on the close of business on

12

July 6, 2012[.]" (Compl. ¶ 22.) This allegation is too temporally attenuated to infer retaliatory causation based on plaintiff's earlier complaints regarding alleged sexual harassment.

## II. Section 1983 and 1985 Claims

Plaintiff brings claims for constitutional violations under Section 1983 against individual defendants Granderson (Count III), Agnello (Count IV), and Carmona-Graf (Count V). Plaintiff claims that each individual defendant "acted under color of law as defined under the Civil Rights Act," and that each acted "with the deliberate purpose of denying Plaintiff's right to due process and to deny Plaintiff the right to redress her grievances under clearly establish[ed] laws outlawing workplace discrimination as alleged[.]" (Compl. at ¶¶ 40-41; 45-46; 50-51.)

These claims all fail for a common reason: the complaint does not adequately plead facts that, if true, would entitle plaintiff to relief.

### A. Section 1983

In order to state a due process claim under Section 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants; and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *Etere v. City of New York*, 381 F. App'x 24, 25 (2d Cir. 2010). A "property interest in employment may be the subject of a due process claim only if the plaintiff has a legitimate claim of entitlement to it." *Etere*, 381 F. App'x at 25.

Plaintiff appears to assert a procedural due process claim, alleging that Granderson, Agnello, and Carmona-Graf denied her the right to "redress her grievances." But plaintiff has not alleged a satisfactory property interest subject to a due process claim, as she admits that the Parks Department hired her only as a "provisional employee." (Compl. ¶¶ 11, 22.) A provisional employee has no legitimate expectation of continued employment sufficient to

constitute a protectable interest under either the U.S. or New York state constitutions. *Brown v. City of New York*, No. 10 CIV. 3104, 2011 WL 6003921, at *13 (S.D.N.Y. Nov. 30, 2011) (citing *Edwards v. City of N.Y.*, 2005 WL 3466009, at *19 (S.D.N.Y. Dec. 19, 2005)). In fact, under New York law, "a provisional employee 'has no property rights in his position and may be lawfully discharged without a hearing and without any stated specific reason.'" *Etere*, 381 F. App'x at 25 (quoting *Finley v. Giacobbe,* 79 F.3d at 1285, 1297 (2d Cir. 1996)). And, because "a provisional employee has no property interest in the employment, there can be no property interest in the procedures that follow from the employment." *Id.* (internal citations omitted).

Absent plaintiff's generalized allegation that the individual defendants denied her the right to "redress her grievances," the complaint lacks specific facts alleging any denial of notice or hearing rights to plaintiff. But even if plaintiff had so pleaded, her status as a provisional employee—with no expectation of continued employment under New York law—is fatal to her Section 1983 claim.

### B. Section 1985

The complaint also includes a Section 1985 claim against all three individual defendants (Count V [sic]). To state a claim under Section 1985, a plaintiff must allege: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

Because plaintiff appears to have abandoned her claim under Section 1985 against all defendants, the court need not reach the merits of this claim in the complaint. (*See* Dkt. No. 17 at 2 n.1 ("Plaintiff is not pursuing her Section 1985 claim against the defendants and all other

claim[s] remain.").) However, to the extent plaintiff has not abandoned such a claim, the court notes that the complaint fails to "provide some factual basis supporting a meeting of the minds such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Arar v. Ashcroft,* 585 F. 3d 559, 569 (2d Cir. 2009) (internal quotation marks and citations omitted). Without adequately pleading the existence of an agreement involving any of the defendants, plaintiff cannot state a 1985 claim. *See Emmerling v. Town of Richmond,* 434 Fed. App'x 10 (2d Cir. 2011) (affirming dismissal of plaintiff's 1985 claim because plaintiff "provided only vague and conclusory allegations of conspiracy").

Moreover, plaintiff's Section 1985 claim is also barred by the intra-corporate conspiracy doctrine, which prohibits such claims against employees of the same entity acting within their scope of employment, because they "are considered a single entity and are legally incapable of conspiring with each other." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 534-35 (S.D.N.Y. 2013). Plaintiff does not claim that Granderson, Agnello, or Carmona-Graf were acting outside their scope of employment, or pursuing personal interests separate and apart from the interests of the Parks Department. Her Section 1985 claim against these defendants—to the extent it is not abandoned—is therefore barred as a matter of law.

15

## Conclusion

For the reasons outlined above, defendants' motion to dismiss and for judgment on the pleadings is granted.

The Clerk of the Court is directed to terminate the motion listed as item 13 on the docket, and to close the case.

SO ORDERED.

Dated:   New York, New York
         March 27, 2015

_____
Thomas P. Griesa
U.S. District Judge

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/30/15
```